UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA    )
    )
v.    )    No. 3:19-CR-161
    )    Judge Varlan
    )
KENT LOWERY BOOHER

**UNITED STATES' SENTENCING MEMORANDUM
AND OPPOSITION TO DEFENDANT'S REQUEST FOR VARIANCE**

The United States of America, by the United States Attorney for the Eastern District of Tennessee submits the following sentencing recommendations with respect to the defendant, Kent Lowery Booher.   For the reasons set forth herein, the United States respectfully submits that a sentence of life plus 120 months imprisonment is sufficient but not greater than necessary to comply with 18 U.S.C § 3553(a).

**SYNOPSIS**

The defendant, Kent Booher, is an incorrigible child predator.   Since no later than 2012, he has preyed upon preteen and teen girls, taking advantage of the drug dependence, desperation, low self-esteem, and lack of parental guidance.   While all of the factors set forth in 18 U.S.C. § 3553 have a bearing upon the selection of a proper sentence, the most compelling factor is found in subsection 3553(a)(1)(C) – the need for protection of the public from further crimes of the defendant.   Booher must *never* again be given the opportunity to prey upon a child victim.   The proposed sentence – life plus 120 months in prison – will accomplish that goal, along with satisfying all of the other sentencing factors.

## STATEMENT OF FACT

### 1. Overview

On November 19, 2019, the defendant was named in a superseding indictment charging

him with two counts of Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), one count of

Sex Trafficking of a Child, in violation of 18 U.S.C. § 1591(a)(1),(b)(2), and (c), one count of

Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251, and one count of

committing a Felony Sexual Offense Against a Minor While on the Sex Offense Registry, in

violation of 18 U.S.C. § 2260(A).   *See* Presentence Investigation Report "PSR," Doc. 81, at ¶¶

3-7.   Defendant went to trial on April 13, 2021.   Six days later, on April 19, 2021, a jury

returned a verdict finding him guilty on all counts.   *Id.* at ¶ 8.

### 2. Defendant's background and offenses

In 2012, Kent Booher was an attorney who represented criminal defendants in Lenoir

City, Tennessee and the surrounding areas.   He had the reputation for representing young

woman who were addicted to drugs and had no financial means to pay for his legal services but

were willing to compensate him with sexual acts.   It was not unusual for Booher to continue

having sex with these former clients after their criminal issues had been resolved, providing them

with money for drugs in return for sex.

In his capacity as a criminal defense attorney, Booher became acquainted with a girl

whose initials are "KV" and who, at that time, was fourteen years old.   KV was introduced to

Booher by one of his drug-addicted clients, Malina Akin, with whom he had an ongoing sexual

relationship.   Akin was a "drug buddy" of KV's mother, Jill Varner.   Akin and Varner allowed

KV to abuse drugs with them.

2

Varner was arrested and spent several months in the local jail. While Varner was serving her sentence, KV had no one to care for her and was essentially living in the Varner family apartment by herself. Akin took this as an opportunity to "party" with KV and decided to introduce her to Booher. The purpose of this introduction was to get money for drugs, which Akin believed Booher would provide in exchange for sex with KV. Booher was happy with that arrangement. Akin admitted to joining with KV in performing oral sex on defendant during a "lipstick party." *Id.* At some point, however, Akin was cut out of the threesome, and Booher began having sex with KV on a regular basis. In return, Booher provided KV with gifts and money that she would use to buy drugs. *Id.* at ¶ 12. In addition to other gifts, KV testified to being given a cell phone and iPad by Booher as payment for sex. *Id.* at ¶ 15. But Booher was not satisfied with merely having sex with KV, he also insisted that she use the phone he had purchased for her to send him nude images of herself.

Immediately after her release from jail, Varner began using drugs again. She and her daughter KV were so addicted to the drugs that Booher did not even attempt to hide the sexual demands he was making of KV. At one point he brazenly showed up at the Varner family apartment seeking sex with KV in the middle of the day, having driven there in his wife's Mazda Miata convertible (complete with specialty license plates). Varner testified to having once entered KV's bedroom and found her daughter performing oral sex on Booher. Id. at ¶13. KV pleaded for her mother's help, saying that she was unable to "finish" the defendant. So, Varner took over and finished the task of perform oral sex on Booher, and he paid her $20. *Id.*

KV had no family member that could help her get free of Booher. Her mother, in particular, was not inclined to make the defendant stop sexually assaulting her daughter, since

that arrangement was her source of drugs.   So KV approached Mary Everett, a neighbor in the same apartment complex.   She told Everett that Booher was forcing her to have sex against her will.   Id. at ¶ 14.   Although, like most persons acquainted with KV, Everett was a drug addict, she was unwilling to tolerate what Booher was doing, and she reported the sexual abuse to a local probation officer.   *Id.*

Exploiting a child's drug addiction and vulnerability in order to use her for sexual gratification should have gotten Booher a lengthy stay in a Tennessee state prison.   For various reasons that are beyond the scope of this memorandum, however, Booher did not go to prison.   Instead, in 2014 he pleaded guilty to two counts of Statutory Rape in Loudon County, and received a three-year suspended sentence. [Id. At ¶16].   In addition, the conviction resulted in the loss of Booher's law license and he became a sex offender, subject to the registration requirements of the Sex Offender Registration and Notification Act (commonly known as "SORNA").

One might have expected Booher to have been thankful for how his 2014 convictions were resolved.   Although he could no longer practice law and had earned a new reputation as a child rapist, Booher was spared even a single night in jail as recompense for his horrific acts.   The normal human response would have been gratitude for the mercy that was shown to him and remorse for his actions that will affect KV for the rest of her life.   Booher, however, felt no remorse.   Within five years, he was back to seeking teenage girls that he could exploit sexually.

SORNA created several obstacles to Booher pursuing his sexual fantasies.   He was required, for instance, to keep his probation officer apprised of his presence on the Internet and social media.   Such restrictions were designed to keep sex offenders from using technology to

4

prey upon minor victims. For this reason, Booher sought to circumvent them. For instance, he did not tell his probation officer about his Facebook or Instagram accounts, nor did he disclose his use of Wickr for surreptitious communications.

Trusting that he had outsmarted his probation officer, Booher began conversing on Facebook with an undercover agent who was posing as a 16-year-old girl named Lori Thompson. Not long after the agent and defendant began their Facebook dialogue, they moved to using phone and text conversations. *Id.* at ¶ 17. Booher was braggadocious in recounting his many and varied sexual exploits as he talked with the agent, he believed to be sixteen-year-old. He even talked about the sexual crimes he had perpetrated on KV, his conviction, his being on the SORNA registry and his many sexual conquests of other young girls in trouble with the law.

In the course of their communications, the defendant solicited Lori Thompson for sexual activities. He suggested going to a hotel together and getting naked in the jacuzzi. *Id.* at ¶18. Despite being told that Thompson was underage, Booher continued the conversations, over several days, about sexual matters, such as "engaging in sexual acts during the afternoon," "let[ting] me do the wetting for you," and "I can assure you multiple orgasms." *Id.* at ¶20, 21 and 22.

After hours of phone calls with the person Booher believed to be sixteen-year-old Lori Thompson, he could wait no longer. He arranged to meet with her at a restaurant and was arrested on the way there.

## ANALYSIS

### 1. *The factors stated in 18 U.S.C. § 3553(a) favor the imposition of a sentence within the guideline range.*

Title 18, United States Code, Section 3553(a) sets forth the factors that a Court should

5

consider in imposing a sentence. In determining the appropriate sentence, the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and impose a sentence sufficient, but not greater than necessary, to comply with the following purposes:

(a)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b)     to afford adequate deterrence to criminal conduct;

(c)     to protect the public from further crimes of the defendant; and

(d)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A sentence within the applicable Guideline range is presumed reasonable. A court is permitted to vary downward or upward from the Guideline range, however, and a sentence outside the applicable range is not presumptively unreasonable. *United States v. Ushery*, 785 F.3d 210, 223 (6th Cir. 2015).

### a. The nature and circumstances of the offense and the history and characteristics of the defendant strongly favor the imposition of a guideline sentence.

Little more needs to be said about the nature and circumstances of the defendant's crimes; by their very nature, they are outrageous and shock the conscience. The defendant's actions, however, become even more egregious when viewed from his perspective. As a criminal attorney who had been in practice for years, Booher used his legal knowledge to circumvent the law for the purpose of gaining his own sexual pleasures.

Booher knew the letter of the law yet preyed on vulnerable girls. His doing so resulted in a conviction for aggravated statutory rape in 2014. *Id.* at ¶ 60. Being spared a lengthy state prison sentence was a remarkably turn of fortune for the defendants – nothing less than a gift from the court. He literally scoffed at this gift, however, when communicating with "Lori

6

Thompson," saying that he did not believe that he had done anything wrong in having sex with KV. A central theme characterized the defendant's conversation with "Lori Thompson" -- "I knew better but I did it anyway."

In fashioning a sentence, the United States urges this honorable Court to consider the *history* of this defendant's crimes and his complete lack of remorse. In addition to being a dangerous predator, from whom our society's children must be protected, he revels in who he is, in his sexual prowess, and his desirability to young females. The nature and circumstances of the defendant's crimes, along with his own history and characteristics, strongly favor the imposition of a guideline sentence of life plus 120 months in prison.

**b. *A sentence in the applicable guidelines range would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the defendant.***

As said above, the defendant's crimes are serious and shocking. The defendant was an officer of the court when perpetrating his sexual crimes on a minor child. Worse still, the defendant's young victim was addicted to drugs, and he used that addiction to keep her available to sexually service him whenever he desired. The defendant likely determined that he could get away with his crimes, knowing KV's parents also struggled with addictions, were frequently in and out of jail, and unable to provide their children with any meaningful parental oversight.[1]

Defendant's actions manifested an overall disregard for the law. Indeed, his acts suggest that he somehow felt himself above the law. He was brash enough to walk into the Varner's home in the middle of the day, while KV's mother at home, and demand oral sex from KV. Likewise, the defendant had the temerity to seek out KV for sex in the middle of the day, in a

---

[1] Defendant was familiar with KV's home situation, since he represented KV's father in a criminal matter around the same time he was sexually abusing KV.

small community and in a low-income apartment complex where he was known, having driven there in his wife's convertible with vanity plates. To use the defendant's own expression, he knew it was wrong, but he did it anyway. Lest we forget the mental havoc the defendant played on KV. KV was starved for an adult.....any adult to take nurture and care for her. When the defendant got a hold of her, she was a fourteen (14) year old child with a severe pill addiction running the streets with no parental guidance, literally and figuratively. Defendant capitalized on KV's vulnerability. It didn't cost him much in money or time. Defendant continuing to ply her with the drugs, provided her life basics such as meals, a cell phone and iPad she would have never gotten from her parents. Worse still the defendant knew KV was starved for parental love and capitalized on that need, conflating ideas of marrying her someday with being loved.

Defendant overplayed his hand, got caught, pled guilty, received no jail time, loses his law license, feels no remorse, doesn't think he has done anything wrong, contacts yet another child online and brags about his crimes believing the child would want to have sex with him. There is no question that no amount of prison time will promote respect for the law by the defendant but it might promote respect from would be predators.

Just punishment for the defendant is also extremely important. The defendant's victim, KV, had no choice and will for the rest of her life be haunted by the nightmare the defendant chose for her for his own sexual gratification. A sentence of life plus 120 months is a just sentence for this defendant.

### c. A sentence of life plus 120 months imprisonment will afford adequate general deterrence to criminal conduct. Likewise, it will protect the public from future crimes by this defendant.

Section 3553 guides the Court to consider the need for a sentence that affords adequate

8

deterrence to criminal conduct. From the standpoint of sentencing, deterrence takes two forms: (1) specific deterrence, to deter similar crimes by the defendant who is being sentenced, and (2) general deterrence, to deter criminal actions by others who may contemplate committing similar offenses. A sentence of life plus 120 months is consistent with the need for deterrence.

Booher will not be deterred. If escaping a lengthy state prison sentence for the statutory rape of KV was insufficient to get his attention, or to convince him of the wrongfulness of his actions, it is unlikely that any sentence this Court might impose would have a greater impact. The defendant's communications with the agent he believed to be Lori Thompson provide a clear insight into Booher's view of what he was doing, and deterrence does not appear to be a reasonable goal. The only way to keep Booher from committing similar crimes in the future is to incarcerate him.

Even though a guideline sentence is unlikely to deter Booher, it may deter other persons who would contemplate using children for sexual gratification. In cases involving sexual violence against children, there is a critical need for general deterrence. A life plus 120 month sentence will send a message to would-be child sex offenders to think again before committing a crime of sexual violence. If the defendant's long sentence keeps at least one child from being sexually victimized, the sentence will be worth it.

### 2. *The United States opposes a departure and/or variance from the Guideline range.*

#### a. *A downward departure is inappropriate in this case.*

The defendant requests a downward departure from the applicable guideline range based upon his age, pursuant to United States Sentencing Guideline § 5H1.1 policy statement. *See* Request for Variance and Sentencing Memorandum (Doc. 90) at 3.

9

Defendant argues he is 67 and has Type II diabetes, which could *potentially* lead to other complications. *Id.*

Booher's request for departure or variance should be denied. USSG § 5H1.1 states that "[a]ge . . . may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." Neither Booher's age nor his physical condition constitute characteristics sufficiently unusual to distinguish his case from other cases covered by the guidelines. Persons older than Booher, and suffering from much more serious medical conditions, are commonly incarcerated where the factors in 18 U.S.C. § 3553 warrant a sentence of imprisonment. Moreover, nothing about the defendant's age or health condition suggests that his medical needs could not be met by the Bureau of Prisons.

### b. A downward variance is inappropriate in this case.

The defendant also request this Court also consider, in the alternative to a downward departure, a downward variance based upon his age, his service in the Coast Guard, and his lack of criminal history. Unfortunately, nothing about Booher's situation is sufficiently unusual to place it outside the heartland of cases covered by the guidelines.

> Before a variance is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies variance because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines

10

cases.

*Koon v. United States*, 518 U.S. 81, 98, 135 L. Ed. 2d 392, 116 S. Ct. 2035 (1996) (emphasis added).

The defendant's case does not fall outside the heartland of cases, as would be necessary for consideration of a downward variance. The defendant suggests that his age and that he has Type II diabetes should qualify him for a variance. A significant number of persons the defendant's age also live with Type II diabetes, and the defendant most likely had this condition when he committed his crimes. The defendant would also like this Court to consider his Coast Guard service. While military service is laudable, it does not take the defendant case outside the heartland. And however noteworthy the defendant's service may have been, it cannot diminish the gravity of the child crimes the defendant committed, and that he somehow regards with pride rather than remorse.

Finally, the defendant requests that he receive a downward departure because he has "no criminal history other than the instant case." *Id.* Booher cites no legal justification for this request. The policy statement concerning "aberrant behavior," may be instructive. In that section, a provision is made for a downward departure in an exceptional where the offense is a single criminal occurrence without any significant planning. *See* U.S.S.G. § 5K2.20. The departure is not available, however, where the crime involves a minor victim. Moreover, Booher's offenses cannot be described as a one-time occurrence that required little planning. Instead, his crimes consist of a pattern of offenses that occurred over a significant period of time and requiring a great deal of planning, scheming and calculation, designed to entice minor children and, at the same time, thwart the safeguards created by SORNA. Defendant's criminal

11

acts show he is a repeat sexual child offender.   This is precisely the situation in which a defendant should *not* be entitled to the sort of departure or variance sought by Booher.

## CONCLUSION

A sentence life plus 120 months in prison would be sufficient, but not greater than necessary, to reflect the seriousness of the defendant's offenses, promote respect for the law, provide adequate deterrence, and safeguard other children from enduring the pain and suffering that Booher would subject upon them for his own sexual gratification.   The sentence is needed in light of the facts surrounding the case, is reasonable, and would be consistent with the goals of 18 U.S.C. § 3553.   Further, KV should be compensated for the lifetime of damage, both physical and mental, that the defendant has caused her to experience.

Respectfully submitted,

FRANCIS M. HAMILTON III
United States Attorney

By:     s/ Jennifer Kolman
        Jennifer Kolman
        Assistant United States Attorney
        jennifer.kolman@usdoj.gov
        GA Bar #427930

        s/ Frank Dale
        Frank M. Dale, Jr.
        Assistant United States Attorney
        frank.dale@usdoj.gov
        D.C. Bar # 454048

        800 Market Street, Suite 211
        Knoxville, TN   37902
        (865) 545-4167

12